RECEIPT #_____ ω
AMOUNT $___150_____
SUMMONS ISSUED_Y-3___
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK.___P2_____
DATE_____4-9-04_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

--------------------------------------------------------------- x

IRONWOOD CAPITAL LTD.,                          :        Civil Action No.:

                          Plaintiff,            :

                                                :        **04cv10726 PBS**

            v.                                  :        **COMPLAINT**
                                                         MAGISTRATE JUDGE Dein

IRONWOOD CAPITAL MANAGEMENT, LLC;               :        **JURY TRIAL DEMANDED**
IRONWOOD PARTNERS, LLC; and ICM SERIES          :
TRUST,                                          :

                          Defendants.           :

--------------------------------------------------------------- x

Plaintiff, by its attorneys, for its Complaint herein alleges as follows:

**JURISDICTION AND VENUE**

1.      This is a civil action for service mark and trademark infringement,
trademark dilution, unfair competition and false designation of origin arising under the
Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark
Counterfeiting Act of 1984, Public Law 98-473 (the "Lanham Act"), and for service
mark, trademark and trade name infringement, unfair competition, deceptive trade
practices and dilution under the laws of the Commonwealth of Massachusetts.

2.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.
§§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has

jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiff's claims for trademark and trade name infringement, unfair competition, deceptive trade practices and dilution under the laws of the Commonwealth of Massachusetts in that such claims arise out of the same nucleus of operative facts as the substantial federal law claims to which they are joined.

3.    This Court has personal jurisdiction over the defendants in that they reside and do business in the Commonwealth of Massachusetts and within this judicial district.

4.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) in that the defendants are entities subject to personal jurisdiction in this judicial district.

## THE PARTIES

5.    Plaintiff, Ironwood Capital Ltd. (hereinafter "Ironwood" or "Plaintiff"), is a corporation duly organized and existing under the laws of the State of Connecticut, having an address at 18 Tremont Street, Boston, Massachusetts 02108.

6.    Defendant Ironwood Capital Management, LLC, is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, having a principal place of business at 21 Custom House Street, Suite 240, Boston, Massachusetts 02109.

7.    Defendant Ironwood Partners, LLC, is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, having a principal place of business at 21 Custom House Street, Suite 240, Boston, Massachusetts 02109.

8.    Defendant ICM Series Trust, is a voluntary association and trust duly organized and existing under the laws of the Commonwealth of Massachusetts, having a principal place of business at 21 Custom House Street, Suite 240, Boston, Massachusetts 02109. Defendants Ironwood Capital Management, LLC, Ironwood Partners, LLC and ICM Series Trust shall sometimes be hereinafter collectively referred to as "Defendants" except where otherwise indicated.

## GENERAL FACTS COMMON TO ALL COUNTS
## PLAINTIFF'S BUSINESS

9.    For approximately thirteen years, and since long prior to the acts of Defendants alleged herein, Plaintiff has been and is now engaged in the offering and provision of an extensive package of financial services including, but not limited to, investment banking services, merchant banking services, investment management services, investment advisory services and financial advisory services ("Plaintiff's Services") in interstate commerce under and in connection with the highly distinctive and arbitrary Federally registered trademark and service mark IRONWOOD CAPITAL®.

10.    In particular, Plaintiff provides its clients with a wide range of financial capabilities under the IRONWOOD CAPITAL® brand including, *inter alia*, senior debt placements, mezzanine and private equity financing, asset-backed securities, capital raising for investment funds, portfolio purchases and sales, financial advisory services, and financial advisory solutions in connection with merger and acquisition transactions.

11.    Ironwood is licensed as a broker/dealer with the United States Securities and Exchange Commission and has been a member of the National Association of Securities

Dealers or "NASD" since at least as early as 1986. Ironwood is additionally licensed by the U.S. Small Business Administration ("SBA") as a Small Business Investment Company ("SBIC").

12.    Plaintiff and its commonly-owned and controlled affiliate, Ironwood Capital Advisors, LLC, also administer the IRONBRIDGE MEZZANINE FUND (the "Fund"), a private investment fund licensed by the SBA as an SBIC. As an SBIC, the fund is comprised of investments in companies that meet the SBA's definition of a small businesses, *i.e.*, those with a net worth of $18 million or less and an average net income in the past two years of $6 million or less. The Fund invests in companies with strong growth potential and its goal is to generate current income and capital appreciation and to provide market-level returns for its investors.

13.    The Fund invests in, and Plaintiff's Services, encompass a broad array of industries including, *inter alia*, manufacturing, service, distribution, consumer products, equipment leasing, specialty and consumer finance, technology, SBICs, public utilities, and international trade finance. While the Fund does not hold ownership positions of its portfolio companies, Ironwood typically serves on the Board of Directors of each portfolio company and becomes an active partner with management, bringing to the table a wealth of financial, management and investment experience. The Fund helps portfolio companies achieve their growth objectives and intends to profitably exit these investments within three to five years.

14.    As a direct and proximate result of the experience, breadth and highly professional nature of Plaintiff's Services, Plaintiff has carefully established and built

strong and lasting client relationships and has raised more than five billion dollars ($5,000,000,000.00) worth of capital on behalf of its clients. In addition, the Fund has eighty-three million dollars ($83,000,000.00) in assets under management. Plaintiff has additionally began using the Ironwood Mark in connection with a new equity fund which Plaintiff expects to be established by June 2004 and which, like the Fund, will function as an SBIC.

## PLAINTIFF'S TRADEMARKS AND TRADE NAMES

15.    For many years, and since long prior to the acts of Defendants complained of herein, Plaintiff Ironwood has been the owner of the service mark and trademark IRONWOOD CAPITAL® which has been continuously used on in connection with the advertising, promotion and provision of Plaintiff's Services.

16.    Plaintiff Ironwood is the owner of United States Trademark Registration No. 2,509,356 covering the service mark IRONWOOD CAPITAL for Plaintiff's Services, which issued on November 20, 2001; and United States Trademark Registration No. 2,469,393 covering the trademark and service mark IRONWOOD CAPITAL for "educational services, namely, consulting, conducting seminars and conferences concerning financial topics" and paper goods and printed matter, namely newsletters and magazines containing information about investment management, performance and opportunities," which was issued on July 17, 2001. Each of these Federal registrations for the trademark/service mark IRONWOOD CAPITAL (collectively, the "Plaintiff's Mark"), are based upon a date of first use in interstate commerce of May 22, 1991.

Photocopies of the Certificates of Registration for the Plaintiff's Mark are annexed hereto as Exhibit A.

17.    By virtue of its extensive use of the Ironwood Marks in connection with Plaintiff's Services, Plaintiff is also the owner the trade names Ironwood Capital Ltd., Ironwood Capital Advisors, LLC, Ironwood Capital Management LLC, Ironwood Capital Holdings LLC, Ironwood Equity Management LLC and Ironwood Equity Fund LP ("Plaintiff's Trade Names" and collectively with the Plaintiff's Marks as, the "Ironwood Marks").

18.    For many years, and since long prior to the acts of Defendants complained of herein, Plaintiff has expended considerable resources both in terms of labor and monies in advertising and promoting its services to its clients, potential clients and the investment community in general.  Plaintiff's Services offered under and in connection with the Ironwood Marks are advertised and promoted through its promotional literature, seminars and conferences at which Ironwood professionals are featured and through Plaintiff's website located at <www.ironwoodcap.com>.  Selected pages from Plaintiff's website are annexed hereto as Exhibit B.  In addition, articles written by Ironwood professionals have appeared in various publications including, *The Hartford Business Journal, CapitalEyes, The Bank News, The Commercial Record and The Hoosier Banker.*

19.    In addition to the traditional marketing channels discussed above, the development of strong and lasting customer relationships has been a hallmark of Plaintiff. Plaintiff has fostered strong investor relationships based upon trust, integrity and longevity.  As a result of the longstanding client relationships developed by Plaintiff and

the continued promotion of Plaintiff's Services offered under and in connection with the Ironwood Marks, Plaintiff and its marks have acquired a great reputation in the industry.

20.    As a direct and proximate result of Plaintiff's extensive advertising and promotion of Plaintiff's Services; the strong and long standing client relationships and concomitant word-of-mouth publicity engendered by the Ironwood Marks and Services; the care and skill exercised by Plaintiff in the provision of its services offered under and in connection with the IRONWOOD CAPITAL mark; the favorable results obtained by Plaintiff on behalf of its clients; the uniform high quality of its services provided under and in connection with  the Ironwood Marks; and the trade and public's acceptance thereof, Plaintiff's IRONWOOD CAPITAL mark symbolizes the valuable and inestimable goodwill that Plaintiff has created by the dependable high quality of its services and by its fair and honorable dealing with the trade and public in the provision of such services.  As such, the trade and public have come to associate the IRONWOOD CAPITAL® mark exclusively with Plaintiff.

## DEFENDANTS' INFRINGING ACTS

21.    Defendants offer and provide financial services; namely, investment management services, asset management services, investment and/or financial advisory services and fund management services ("Defendants' Services") in interstate and intrastate commerce, including commerce within the Commonwealth of Massachusetts and this judicial district.

22.    Long after Plaintiff's selection, adoption and use of the Ironwood Marks, Defendants, without authorization or license from Plaintiff, have knowingly and willfully

used an identical copy or colorable imitation of the Ironwood Marks (the "Infringing Mark") on and in connection with their offering, promotion and provision of Defendants' Services.

23.    Defendants' Services offered under and in connection with the Infringing Mark are rendered in connection with the management of a mutual fund that consists primarily of investments in common stocks of undervalued and small companies that have a market capitalization of less than one billion dollars ($1,000,000,000)(hereinafter "Defendants' Fund"). Upon information and belief, Defendants' Fund presently has approximately five hundred million dollars ($500,000,000.00) under management.

24.    Defendants' Services, offered under and in connection with the Infringing Mark, are advertised, promoted, offered and provided to both high net worth individual investors and institutional investors including, but not limited to, pension funds, endowments, foundations and public retirement plans. Defendants also provide private account services and manage individual portfolios under and in connection with the Infringing Mark.

25.    Defendants claim that they may also invest its assets in "other securities" or engage in different investment practices, including derivatives, in an effort to achieve the investment objectives of Defendants' Fund. According to Defendants, such "other securities" or investment practices include: convertible and debt securities, foreign securities, rights and warrants, illiquid and restricted securities, below investment-grade debt securities, repurchase agreements, when-issued and delayed-delivery securities,

hedging transactions, short sales against the box, lending portfolio securities and borrowing money.

26.    Defendants' Fund is administered by Defendant ICM Series Trust and the investment management duties of the fund are performed by Defendant Ironwood Capital Management, LLC and/or Ironwood Partners, LLC.

27.    Upon information and belief, Defendants' Services offered under and in connection with the Infringing Mark are additionally marketed under the acronym ICM -- standing for Ironwood Capital Management.

28.    Defendant Ironwood Capital Management, LLC sought registration of the mark ICM for "mutual fund investment services" with the United States Patent and Trademark Office and such application has been refused registration by the USPTO based upon the prior rights and registrations of a third party.

29.    Defendants own and operate a website found on the Internet at the URLs <http://www.icmfunds.com> and <http://www.ironwoodcapitalmanagement.com>, which is directed to the advertising and promotion of Defendants' Services under and in connection with the Infringing Mark (the "Website"). Each of the aforesaid URLs "point" to the Website. Selected pages from the Website are annexed hereto as Exhibit C.

30.    The Defendants' Website depicts the Infringing Mark together with the depiction of an Ironwood tree, and the following description of the Ironwood tree and Defendants' investment style:

"**The Ironwood Tree** is a small, hardy tree, yielding a very useful and solid wood. Patiently, these trees remain under the forest canopy until taller neighbors fall. Once given this opportunity, the Ironwood grows quickly to reach its full potential. We believe this imagery is appropriate for our firm as well as our investment style."

*See* Exhibit C hereto.

31.  Plaintiff first learned of Defendants use of the Infringing Mark on or about October 2001 and has since failed in its attempts to resolve this matter amicably. In fact, Plaintiff sent a letter on October 1, 2001 notifying Defendants of their infringement of the Ironwood Marks, and requesting that Defendants cease and desist from all further unauthorized and infringing uses immediately. Despite an exchange of correspondence and discussions, Defendants have maintained their unauthorized and infringing use of the Ironwood Marks. A copy of Plaintiff's October 1, 2001 letter is annexed hereto as Exhibit D.

32.  Defendants' use of the Infringing Mark on or in connection with Defendants' Services, which are very closely related to Plaintiff's Services, has caused actual confusion in the marketplace as to the source of Defendants' Services and, unless enjoined, is likely to continue to cause further confusion, or to cause mistake or to deceive.

## COUNT ONE

## FEDERAL SERVICE MARK AND TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

33.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34.    The Ironwood Marks and the goodwill of the businesses associated therewith in the United States is of great and incalculable value, is highly distinctive and arbitrary, and has become universally associated in the mind of the relevant trade and public with the services of the very highest quality and reputation finding their source exclusively in Plaintiff.

35.    Upon information and belief, without Plaintiff's authorization or consent, and having actual and constructive knowledge of Plaintiff's prior rights in and to the Ironwood Marks, and the fact that the Infringing Mark is confusingly similar to the Ironwood Marks, Defendants have advertised, offered and/or provided Defendants' Services under and in connection with the Infringing Mark to the relevant trade and consuming public in direct competition with Plaintiff's provision of Plaintiff's services, in or affecting interstate commerce.

36.    Defendants are not authorized or licensed by Plaintiff to advertise, offer, or provide Defendants' Services or identify Defendants' Services and business under or in connection with the IRONWOOD CAPITAL® marks and/or the designation IRONWOOD.

37.    Upon information and belief, the Infringing Mark as used on and in connection with the advertising, promotion and provision of Defendants' Services, which services are similar and/or closely related to Plaintiff's Services, constitutes a colorable imitation of the Ironwood Marks.

38.    Upon information and belief, Defendants' use of copies or colorable imitations of the Ironwood Marks in connection with services which are highly similar

and/or closely related to Plaintiff's Services has resulted in actual confusion and creates a likelihood that a continued false and unfair association will be made between Defendants' Services and Plaintiff's Services in that the relevant trade and consuming public are likely to mistakenly believe that Defendants' Services offered under and in connection with the Infringing Mark, originate from, are associated with or are otherwise authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

39.   Upon information and belief, Defendants, by their acts complained of herein, have infringed the service mark and trademark rights of Plaintiff, have competed unfairly with Plaintiff, and has otherwise used a virtually identical service mark and trademark to that owned by Plaintiff to promote Defendants' Services which are not connected with, or authorized, approved, produced or sponsored by, Plaintiff.

40.   As a direct and proximate result of Defendants' illegal activities, Plaintiff has suffered serious damage and unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiff, which is irreparable, will increase.

41.   The aforesaid acts of Defendants constitute trademark and service mark infringement in violation of Plaintiff's rights at common law and under the Lanham Act.

42.   Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

43.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.    Defendants' use of the Infringing Mark in connection with services that are of the same general nature and type as Plaintiff's Services provided by Plaintiff under and in connection with the IRONWOOD CAPITAL® marks and, as such, Defendants' use has caused actual confusion and is likely to continue to cause confusion amongst the relevant trade and consuming public.

45.    By misappropriating and using the Ironwood Marks, Defendants misrepresent and falsely describe to the relevant trade and general pubic the origin and source of Defendants' Services and create a likelihood of confusion by ultimate purchasers as to both the source and sponsorship of such services.

46.    Defendants' unlawful, unauthorized and unlicensed advertising, promotion and provision of Defendants' Services under and in connection with the Infringing Mark, creates express and implied misrepresentations that Defendants' Services were authorized or approved by Plaintiff, all to Defendants' profit and Plaintiff's great damage and injury.

47.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Ironwood Marks, in connection with their services, in interstate commerce constitutes a false designation of origin and unfair competition.

48.    Plaintiff had no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE

## FEDERAL TRADEMARK DILUTION
## (15 U.S.C. § 1125 (c))

49.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.    The Ironwood Marks are "famous marks" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1) and have been famous marks since prior to Defendants' conduct as alleged herein.

51.    Defendants' advertising, promotion and provision of Defendants' Services in commerce under and in connection with the Infringing Mark dilutes the distinctive quality of the Ironwood Marks, and was done with the willful intent to trade on Plaintiff's reputations and/or to cause dilution of the Ironwood Marks.

52.    Defendants' unauthorized use of the Ironwood Marks on or in connection with Defendants' Services was done without notice and full knowledge that the advertising, promotion and provision of such services in connection with the Infringing Mark was not authorized or licensed by Plaintiff.

53.    Defendants' aforesaid acts are in knowing and willful violation of Plaintiff's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

54.   Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to Plaintiff's goodwill and reputation.

## COUNT FOUR

## COMMON LAW SERVICE MARK AND TRADE NAME INFRINGEMENT

55.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.   Plaintiff has carefully built up valuable goodwill in the Ironwood Marks.

57.   With full knowledge of the fame of the Ironwood Marks, Defendants trade on the goodwill associated with the Ironwood Marks and mislead the trade and public into assuming a connection between Defendants' Services and those offered by Plaintiff.

58.   Defendants' unauthorized use of the Ironwood Marks under and in connection with the Defendants' Services is likely to and does permit Defendants to pass off Defendants' Services to the trade and general public as those of Plaintiff, all to the detriment of Plaintiff and the unjust enrichment of Defendants.

59.   Defendants' acts of service mark, trademark and trade name infringement cause confusion and mislead and deceive the pubic as to the source of Defendants' Services, permits Defendants to pass off Defendants' Services as and for Plaintiff's Services, and falsely suggests a connection between Defendants and Plaintiff and will continue to do so, in violation of the common law of the Commonwealth of Massachusetts.

60.    Defendants' acts of service mark and/or trademark and/or trade name infringement have caused and will continue to cause Plaintiff irreparable harm unless restrained by this Court. Plaintiff has no adequate remedy at law.

## COUNT FIVE

## UNFAIR COMPETITION UNDER MASSACHUSETTS LAW

61.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.    Plaintiff has carefully built up valuable goodwill in the Ironwood Marks and the high quality and customer value associated with Plaintiff's Services.

63.    Defendants' use of the Ironwood Marks is likely to and does permit Defendants to palm off Defendants' infringing services as those of Plaintiff, all to the detriment of Plaintiff and the unjust enrichment of Defendants.

64.    Defendants, upon information and belief, with reckless disregard for Plaintiff's superior rights in and to the Ironwood Marks, intended to and did trade on the goodwill associated with the Ironwood Marks, and has misled and will continue to mislead the trade and public into assuming a false connection between Plaintiff and Defendants by Defendants' provision of its services under and in connection with the Infringing Mark.

65.    Defendants' unauthorized use of the Ironwood Marks has caused and is likely to continue to cause Plaintiff damage by tarnishing the valuable reputation and image associated with Plaintiff and its services.  The Defendants have further palmed off

their services as Plaintiff's Services by Defendants' false labeling and misrepresentations to the trade and consuming public, members of whom are likely to and do believe Defendants' Services emanate from or are associated with Plaintiff.

66.    The acts of Defendants, which permit and accomplish confusion, mislead and deceive the trade and public as to the source of Defendants' Services, permit and accomplish palming off of Defendants' Services as those of Plaintiff and falsely suggest a connection with Plaintiff, constitute acts of unfair competition with Plaintiff in violation of the laws of the Commonwealth of Massachusetts.

67.    Defendants' acts have caused and will continue to cause Plaintiff irreparable harm unless enjoined by this Court. Plaintiff has no adequate remedy at law.

**COUNT SIX**

**MASSACHUSETTS TRADEMARK DILUTION
(M.G.L.A. c. 110B § 12)**

68.    The Plaintiff repeats and realleges paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.    Defendants' acts have caused damage to Plaintiff by tarnishing Plaintiff's valuable reputation and diluting or blurring the distinctiveness of the Ironwood Marks in violation of Massachusetts General Law c. 110B § 12, and will continue to tarnish and destroy the value of the Ironwood Marks unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## COUNT SEVEN

## UNLAWFUL DECEPTIVE ACTS AND PRACTICES
### (M.G.L.A c. 93A § 2)

70.     Plaintiff repeats and realleges paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71.     Upon information and belief, Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's prior rights in the Ironwood Marks, and the fact that the Infringing Mark is confusingly similar to the Ironwood Marks, Defendants have advertised, offered and provided Defendants' Services under and in connection with the Infringing Mark to the relevant trade and consuming public in direct competition with Plaintiff's provision of its services.

72.     Defendants' use of copies or simulations of the Ironwood Marks is likely to cause and is causing confusion, mistake and deception among the relevant trade and purchasing public as to the origin of Defendants' Services, and is likely to deceive the public into believing Defendants' Services being advertised, offered, promoted and provided by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff in violation of Massachusetts General Law c. 93A § 2.

73.     Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

74.   Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

WHEREFORE, Plaintiff demands judgment:

1.  That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be enjoined and restrained permanently:

a.  from using in any manner any or all of the Ironwood Marks, alone or in combination with any word or words that so resemble each of the Ironwood Marks as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, promotion, offering, or provision of any service not Plaintiff's, or not authorized by Plaintiff to be provided in connection with the Ironwood Marks.

b.  from passing off, inducing, or enabling others to sell or pass off any service as and for services provided by Plaintiff, not Plaintiff's, or not provided under the control and supervision of Plaintiff and approved by Plaintiff for use under the Ironwood Marks;

c.  from committing any acts calculated to cause purchasers to believe that Defendants' Services are those sold under the control and supervision of Plaintiff, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiff;

d.  from further diluting and infringing the Ironwood Marks and damaging Plaintiff's goodwill;

e.  from otherwise competing unfairly with Plaintiff in any manner;

f.  from shipping, delivering, distributing, returning or otherwise disposing of, in any manner, any materials, including but not limited to advertising and promotional materials bearing the Infringing Mark alone or in combination with any other word(s), design(s), or symbol(s);

2.   That Defendants be required to forthwith deliver up to Plaintiff any and all circulars, business cards, labels, signage, prints, packages, wrappers, receptacles, advertising matter, promotional, and other materials in the possession of Defendants or under their control bearing the Infringing Mark, alone or in combination with any other word(s), symbol(s), or design(s).

3.   That Defendants be required to supply Plaintiffs with a complete list of entities to whom they have offered services under and in connection with the Infringing Mark.

4.   That Defendants be required to forthwith to change their corporate names and/or trade names to remove all uses of the mark IRONWOOD and/or IRONWOOD CAPITAL whether alone or in combination with any other word(s), design(s) or symbol(s) in each and every jurisdiction in which Defendants have formed an active entity under and in connection with the mark IRONWOOD CAPITAL and/or IRONWOOD; and that Defendants be required to forthwith remove all uses of the IRONWOOD and/or IRONWOOD CAPITAL designations from their place(s) of business.

5.   That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs 1 through 4, *supra.*

6.   That Defendants account for and pay over to Plaintiff profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and, that the amount of

damages for infringement of Plaintiff's registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law.

7.   That Plaintiffs be awarded punitive damages in an amount to be determined.

8.   That Plaintiffs be awarded reasonable attorneys fees and have such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule 38(b), Plaintiff hereby demands a jury trial on all issues so triable that are raised by this Complaint.

Dated: April 9, 2004

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
[GARY R. GREENBERG BBO# 205940]
One International Place
20th Floor
Boston, Massachusetts 02110
(617) 310-6000

and

Todd S. Sharinn, Esq.
Greenberg Traurig, LLP
885 Third Avenue
New York, New York 10022
(212) 801-2157

*Attorneys for Plaintiff*
*Ironwood Capital Ltd.*